UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 3: 08-21-DCR |
| ) | |
| V. ) | |
| ) | |
| CHARLES WILLIAM NIGHBERT, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |

*** *** *** ***

This matter is pending for consideration of Defendant Charles William Nighbert's motion to sever pursuant to Rule 14 of the Federal Rules of Criminal Procedure. [Record No. 123] Nighbert contends that, if the Court does not grant him a separate trial, his Sixth Amendment right to confrontation will be violated by both the admission of certain tape recordings and the failure of Defendants Lawson and Billings to testify. Alternatively, Nighbert requests that the Court sever Count 5 of the Indictment and order a complete redaction of the taped statements in which he is named. In response, the government incorporates arguments from its previous response to the Defendants' joint motion to sever which asserts that the Defendants failed to carry their burden of demonstrating that a joint trial would result in substantial prejudice. [Record No. 150]

For the reasons discussed below, the Court will deny the motion to sever.

**I.     Background**

In January 2008, the Office of the Inspector General ("OIG") of the Kentucky Transportation Cabinet ("KTC") began an investigation into allegations that the confidentiality of KTC engineer estimates may have been compromised. The following month, the FBI, in conjunction with state authorities, began an investigation into potential misapplication of funds and property of a federally-funded state government agency involving many of the same allegations that OIG had investigated. In early March 2008, James Rummage ("Rummage"), an executive with KTC, retained legal counsel and admitted to the FBI that he had given KTC engineer estimates to Lawson at the direction of Nighbert and, in turn, received cash from Lawson.

Beginning around March 12, 2008, Rummage began cooperating with the FBI by recording conversations with the subjects of the investigation. Nighbert was never recorded by Rummage, but he is mentioned on a number of occasions in Rummage's recorded conversations with Lawson and Billings. Nighbert contends that there are innocent explanations for these references. However, because there is no guarantee that either co-defendant will testify in a joint trial, he argues that "neither Lawson's or Billings' words can be used against Nighbert without undergoing the 'crucible of cross examination' whereby Nighbert asserts that Lawson and Billings would be compelled to refute any incrimination of Nighbert and, in fact, admit an innocent explanation of any reference to Nighbert." Thus, Nighbert argues that there would be a serious risk of prejudice in a joint trial, because he may be unable "to exercise his

constitutional right to confrontation and cross examination" if the tape recordings are admitted and the co-defendants do not testify.  [Record No. 123, pp. 7–8]

**II.     Standard of Review**

"As a general rule, persons jointly indicted should be tried together."  *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (quoting *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987)).  *See also United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) (noting that Rule 8 should be construed in favor of joinder).  There is a strong preference for joint trials in federal court because joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotations and citation omitted).  In addition, defendants are not entitled to separate trials "simply because they have a better chance of acquittal if they are tried alone."  *Ross v. United States*, 339 F.3d 483, 493 (6th Cir. 2003) (citation omitted).

Despite the strong preference for jointly-indicted defendants to be tried in a single trial, a district court does have the discretion to grant a motion to sever if joinder "appears to prejudice a defendant or the government."  FED. R. CRIM. P. 14(a).  However, the risk of prejudice must be substantial for a court to sever defendants who have been properly joined pursuant to Rule 8.  The Supreme Court cautions that, "a district court should grant a severance under Rule 14 *only if* there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro*, 506 U.S. at 539 (emphasis added).  Ultimately, a district court is given discretion to determine whether to grant a motion to sever, and reversal of this decision is only warranted after

a strong showing of prejudice. *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006). *See also United States v. Cody*, 498 F.3d 582, 586 (6th Cir. 2007) (noting that a district court's denial of a motion to sever is reviewed under the abuse-of-discretion standard).

### III. Analysis

Nighbert contends that there is a serious risk that a joint trial would compromise his Sixth Amendment right to confrontation. He predicts that the government will move to admit Rummage's recorded conversations with Lawson and Billings under the co-conspirator exception to the hearsay rule. Nighbert argues that these statements do not fall within the co-conspirator statement exclusion and that these statements are testimonial in nature. Thus, Nighbert argues that if these statements are admitted at trial, his right to confrontation will be violated if either Lawson and/or Billings assert their Fifth Amendment right not to testify.

#### A. Hearsay Issue

Out-of-court statements cannot be admitted unless the statements fall within an exception or exclusion to the hearsay rule. FED. R. EVID. 802. One such exclusion allows for admission of co-conspirator statements made during the course of and in furtherance of the conspiracy. FED. R. EVID. 801(d)(2)(E). For a statement to be properly admitted under this exclusion, the government must prove by a preponderance of evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were co-conspirators; and (3) the statements were made during the course of and in furtherance of the conspiracy.[1] *United States v. Conrad*, 507 F.3d 424, 429 (6th

---

[1] "A statement is made 'in furtherance' of a conspiracy if it is intended to promote the objectives of the conspiracy." *United States v. Conrad*, 507 F.3d 424, 430 (6th Cir. 2007). For instance, statements that serve to conceal or to impede the investigation are considered to be "in furtherance of the conspiracy." *United States v. Martinez*, 430 F.3d 317, 327 (6th Cir. 2005). It is not necessary for the statement to have

Cir. 2007). Nighbert's arguments that the recorded statements do not fall within the co-conspirator statement exclusion are premature. Since the admissibility of the statements under this exclusion is dependent upon the government's proof of the above-listed factors, the Court is unable to rule on the admissibility of the recordings at this time. A ruling on the recordings' admissibility will be made at the appropriate time during trial.

### B. Confrontation Clause Issue

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend VI. "In addition to the value of forcing a witness to testify face-to-face with the accused, another primary interest secured by the Confrontation Clause is the right of cross examination, which is critical for ensuring the integrity of the fact-finding process." *Gray v. Moore*, 520 F.3d 616, 627 (6th Cir. 2008) (internal citations and quotations omitted). However, in *Crawford v. Washington*, the Supreme Court held that "not all hearsay implicates the Sixth Amendment's core concerns." 541 U.S. 36, 51 (2004). "Rather, the court introduced a distinction between testimonial and non-testimonial statements for confrontation purposes, explaining that the protection applies only to prohibited 'testimonial' statement when the declarant is not available to be cross-examined by the defendant." *United States v. McGee*, 529 F.3d 691, 697 (6th Cir. 2008).

---

actually advanced the conspiracy to be considered "in furtherance of a conspiracy." *Conrad*, 507 F.3d at 430. However, statements made after the objects of the conspiracy have been completed are not made in furtherance of the conspiracy. *Krulewitch v. United States*, 336 U.S. 440 (1949) (an agreement to conceal a completed crime does not extend the life of the conspiracy).

In light of *Crawford*, the threshold question is whether Lawson's and Billing's statements are testimonial. Since *United States v. Cromer*, 389 F.3d 662, 673–74 (6th Cir. 2004), the Sixth Circuit has consistently held that:

> The proper inquiry [for determining if a statement is testimonial] is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

*See, e.g., United States v. McGee*, 529 F.3d 691, 697–98 (6th Cir. 2008); *United States v. Mooneyham*, 473 F.3d 280, 286 (6th Cir. 2007); *United States v. Johnson*, 440 F.3d 832, 843 (6th Cir. 2006).

Based on this inquiry, Nighbert asserts that Lawson's recorded statements should be considered testimonial because he claims that Lawson was aware, or at least suspected, that his conversations with Rummage were being recorded. [Record No. 123, pp. 8–9] Nighbert provides the following examples to support this contention:

Rummage/Lawson Tape (3/07/08):

Lawson: "I thought you were afraid to talk to me."

Rummage: "Well, I'm . . . I'm kind [of] worried about that too, that's why I'm trying to be real careful here . . . careful here on the cell phone."

Lawson: "I understand."

Rummage: "I mean I'm on a pay phone now."

Lawson: "I under . . . I understand, Jim."

Rummage/Lawson Tape (3/12/08):

> Lawson: "You think they've got our, uh, phones tagged or anything?"
>
> Rummage: "Uh, the . . . from what just talkin' to em, uh, today, th . . . they didn't . . . they didn't talk like that, I mean I don't know . . . I don't know that, but they . . . they didn't talk like that to me."
>
> Lawson: "the . . . (attorney) just said for us to be real careful of what we talked about."
>
> Rummage/Lawson Tape (3/26/08):
>
> Lawson: "I don't know. Well you know who called the, uh, OI, I mean OIG is the one who called them in and, you know, that, uh, the Secretary and nem tell the OIG what to do. Are you taped?"
>
> Rummage: "NO."
>
> Lawson: "You're tapin' me?"
>
> Rummage: "NO."
>
> Lawson: "But I wouldn't care if you was, but . . . ."

[*Id.*] In addition, Nighbert notes that:

> Lawson appeared not only to suspect he was being taped, he indicated caution and deliberation in his speech because of that likelihood, and expressly stated he "wouldn't care" if he was being taped. Rummage, of course, knew the conversations were being taped as he read from a script written by the government to create testimony for trial. Likewise, Billings appeared cautious in speaking with Rummage, wary that he might be taped, going so far as to communicate non-verbally.

[*Id.*, p. 9] Nighbert concludes that, because Lawson and Billings were apparently aware of the likelihood of taping, "the entire tapes are 'testimonial' as to Nighbert and trigger his rights under the Confrontation Clause." [*Id.*, p. 13] The Court disagrees with this analysis, and holds that Lawson's and Billing's statements are non-testimonial.

The Sixth Circuit has stated that the focus of the testimonial inquiry is on the declarant. *Johnson*, 440 F.3d at 843. Therefore, the fact that Rummage was fully aware that the conversations were being record and that they would likely be used in prosecuting a crime is irrelevant. In regard to Lawson and Billings, while they may have been suspicious about possibly being taped, there is no indication that they intended to bear testimony against Nighbert during their conversations with Rummage. In addition, the Court is doubtful that a reasonable person in Lawson's or Billing's position would anticipate that their statements would later be used *against Nighbert* in a criminal investigation or prosecution. If anything, it appears that Lawson and Billings were cautious out of fear that the statements might be used against them.

Nighbert also points out that "when the entire tapes are played . . . [Lawson's and Billing's] words appear to exculpate, rather than incriminate, themselves or anyone else." [Record No. 123, p. 7] This assertion tends to undercut the Defedant's argument that the statements were made with the intent to bear testimony against him. Therefore, based on the examples provided, the Court concludes that Nighbert has failed to demonstrate that the recorded conversations are testimonial. The Confrontation Clause does not apply to non-testimonial statements, so if the recorded conversations are admitted into evidence, Nighbert's right to confrontation will not be violated. *Desai v. Booker*, 538 F.3d 424, 427 (6th Cir. 2008) (citing *Davis v. Washington*, 547 U.S. 813, 823–26 (2006)).

### C.     Additional Arguments

Likewise, Nighbert's concern about a possible spill-over effect and jury confusion does not warrant severance. *See United States v. Blakeney*, 942 F.2d 1001, 1011 (6th Cir. 1991)

(noting that the court "presumes that the jury will be able to sort out the evidence applicable to each defendant and render its verdict accordingly").  In addition, Nighbert has not made a sufficient demonstration to warrant severance based on possible exculpatory testimony from co-defendants at a separate trial.[2]  Finally, Nighbert's motion requests that, in the alternative, the Court should sever Count 5 and order a complete redaction of the statements.  However, Nighbert has not demonstrated that Count 5 should be severed[3] and redaction of the statements is unnecessary in light of the Court's holding.

### IV.     Conclusion

The Court cannot at this time, determine whether the subject statements constitute an exclusion to the hearsay rule as statements of co-conspirators.  However, Lawson's and Billing's statements should not be deemed to be "testimonial" under the holding in *Crawford v. Washington, supra*.  Therefore, their admission would not violate Nighbert's right to confrontation.  And finally, Nighbert has failed to show that there is a serious risk that a joint trial would compromise one of his specific trial rights.  *See Zafiro*, 506 U.S. at 539.  Accordingly, it is hereby

**ORDERED** that Defendant Nighbert's motion to sever [Record No. 123] is **DENIED**.

This 13th day of February, 2009.

---

[2]   For a defendant to receive a separate trial based on upon a co-defendant's statements, the defendant "must demonstrate: (1) a *bona fide* need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed." *Ross v. United States*, 339 F.3d 483, 493 (6th Cir. 2003).

[3]   The Defendant's joint motion to sever Counts 1–5 from Counts 6–8 [Record No. 117] will be addressed in a separate opinion.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

-10-