UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CRIMINAL ACTION NO. 08-21-KSF

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                    **OPINION & ORDER**

LEONARD LAWSON, et al.                                                   DEFENDANTS

* * * * * * * * *

This matter is before the court on the objections of the defendant, Charles William Nighbert,

to the Magistrate Judge's Report & Recommendation [DE 387] with regard to Nighbert's Motion

to Exclude certain evidence pursuant to Federal Rule of Civil Procedure 404(b).

**I.     RELEVANT FACTS**

On May 22, 2009, Magistrate Judge Todd issued a Report & Recommendation with regard

to Nighbert's motion to exclude the following evidence:

(1)     Evidence of an alleged October 2007 conversation between Nighbert and

Williamsburg Mayor Roddy Harrison regarding Nighbert's son;

(2)     The state financial disclosure forms on which Nighbert failed to list his ownership

interest in Double Buck, LLC;

(3)     The FBI's October 2007 interview with Tim Hill regarding Kentucky road contracts,

Lawson, Rummage, and Nighbert; and

(4)     The October 6, 2008, Lexington Herald Leader article regarding Nighbert's property

near I-75 and a highway construction project that occurred nearby.

Magistrate Judge Todd recommended the FBI report and the financial disclosure forms be

admitted pursuant to Rule 404(b) of the Federal Rules of Evidence.  He also recommended not admitting the Hill interview and the newspaper article pursuant to Rule 404(b), but stated that they may be admissible for another purpose under another evidentiary rule.

Nighbert objects to the recommendations that the evidence regarding the Nighbert-Harrison conversation as well as the financial disclosure forms should be admitted pursuant to Rule 404(b). [Record No. 401]  He argues neither is relevant to the crimes charged.  In the alternative, if the Court were to find either relevant, Nighbert argues that the prejudicial effect of their admission would substantially outweigh their probative value.

Evidence of the Nighbert-Harrison conversation is not relevant evidence, and the Court will not adopt the recommendation that this evidence should be admitted pursuant to Rule 404(b).  The financial disclosure forms are relevant evidence, and they are admissible pursuant to Rule 404(b). Thus, this recommendation will be adopted.  Since the government did not file objections, the court need not review Magistrate Judge Todd's factual or legal conclusions regarding the inadmissibility of the Hill interview and the newspaper article.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## II.    ANALYSIS

A court must review *de novo* those portions of a magistrate judge's recommended disposition to which an objection is made.  28 U.S.C. § 636(b)(1)(C).  Nighbert's primary objection to Magistrate Judge Todd's recommendations is that neither evidence of the Nighbert-Harrison conversation nor the financial disclosure forms is relevant evidence.  In the alternative, if the evidence is deemed relevant, Nighbert objects to Magistrate Judge Todd's conclusion that the prejudicial effect of admission does not substantially outweigh the probative value.

### A.      Evidence of the Nighbert-Harrison Conversation

The government plans to introduce the testimony of Williamsburg Mayor Roddy Harrison in its case-in-chief, and claims this testimony concerns "what the government will describe as an attempt to obstruct justice in an investigation into Nighbert's son."  The government argues, "This incident of prior obstructive conduct is probative of Nighbert's intent to consult and assist in on-going conduct designed to obstruct justice."  In support of Harrison's testimony, the government will likely seek to admit the FBI investigation report detailing the incident.  Nighbert argues there is absolutely no connection between the current matter and his conversation with Mayor Harrison.  He claims the conversation was merely his expressing concern about how one Williamsburg police officer was treating his (Nighbert's) son Brad, a former Williamsburg police officer.  The October 30, 2007, FBI investigation report detailing the incident states Nighbert said the following to Harrison in a hushed tone during then-Governor Fletcher's visit to the University of the Cumberlands:

> I know there is an FBI investigation going on.  I want to tell you something about WAYNE BIRD.  He needs to back down, the only person that he is hurting is BRAD, and BRAD has been hurt enough.  Anybody that he questions, he asks about BRAD's involvement.  If it keeps up I can fuck WAYNE up.  I know a lot of shit.  Of all the things that I've done for WAYNE, and how I've helped him, and his mom and dad through a bankruptcy.  We don't deserve this shit.  All I know I can fuck WAYNE up and I can fuck a lot of people at the city.

[Record No. 122, Ex. A] (report states that this is not word for word what was said).  It should be noted that the FBI investigation referred to by Nighbert is not the FBI investigation begun in February 2008 that led to the charges in the current case.  Nighbert alleges there is no nexus between the facts and intent of the October 2007 incident and the alleged obstruction charges in the superseding Indictment.  Rather, he contends that "the government offers no real justification for its

3

admission other than the flat assertion that it might constitute 'prior obstructive conduct.'" Thus, Nighbert contends any evidence of this conversation is not relevant.

"Relevancy is the threshold determination in any decision regarding the admissibility of evidence; if evidence is not relevant, it is not admissible." *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 375 (6th Cir. 1983) (citing Fed. R. Evid. 402). Evidence is relevant if it has "a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. The government claims the conversation with Mayor Harrison is relevant because it is probative of Nighbert's intent to obstruct justice in the current case. In support of its claim that alleged prior uncharged obstructive conduct is relevant admissible 404(b) evidence, the government cites to *United States v. Moree*, 897 F.2d 1329 (5th Cir. 1990) and *United States v. Arnold*, 773 F.2d 823 (7th Cir. 1985). These cases are also cited, but not discussed, in the Report & Recommendation. However, reliance on these cases is misplaced for two reasons.

First, both cases are factually similar to each other, but materially distinguishable from the current case. In *Moree*, Sim Ed Moree, a Marion County supervisor, and Robert Joiner, the Highway Commissioner for the Southern District of Mississippi, were both indicted on charges related to a 1987 FBI investigation into public corruption in Mississippi. In December 1987, Moree's original indictment was dismissed without prejudice to allow the government to reindict Moree on additional charges. After the dismissal and before his reindictment, Moree told Joiner that his indictment was dismissed by unnamed persons for $25,000. Moree claimed that for $160,000, these same persons could "fix" Joiner's sentencing. With Joiner's cooperation, an FBI investigation led to Moree's indictment on obstruction charges. *Moree*, 897 F.2d at 1331.

4

After Moree's motion to exclude was denied, the government offered testimony from Sam Perniciaro, Sr., a former Hancock County supervisor also facing criminal charges, regarding a very similar instance of unindicted obstructive conduct.  Perniciaro testified that two weeks before the bribe offer to Joiner, Moree contacted him and offered to fix his trial for $55,000.  *Id.* at 1334.

On appeal, the Fifth Circuit held the district court did not abuse its discretion by admitting Perniciaro's testimony as 404(b) evidence, because the evidence was relevant to Moree's intent.  In reaching this holding, the Fifth Circuit specifically noted the substantial similarities between the uncharged and the charged obstructive conduct:

> Perniciaro's testimony depicts a striking similarity between Moree's activities toward Perniciaro and his offer two weeks later to Joiner.  In both schemes Moree was introduced to the intended victim by a third party, and Moree planned to meet the victim at a motel.  Moree told both Perniciaro and Joiner that his indictment had been dismissed and that he could arrange the dismissal of their indictments for a substantial payment to be made in cash, one-half at the time of the deal and one-half when the indictment was dismissed.  Although Moree did not specifically mention his co-conspirators to Perniciaro, at the end of their conversation he did state: "Well, we're waiting to hear from you."  While speaking with Joiner two weeks later, Moree, mentioned his previous attempt to aid another indicted suspect.

*Id.* at 1334–35.

In *Arnold*, Ralph Carazzo was subpoenaed to testify in front of a federal grand jury regarding an investigation into the activities of Chicago loan sharks Joseph Arnold and Joseph Grieco.  Using financial incentives, including an offer to pay for Carazzo's attorney, and thinly-veiled threats, Arnold and Grieco convinced Carazzo to assert his Fifth Amendment right to not testify in front of the grand jury.  Despite offers of government immunity and protection, and a court order compelling his testimony, Carazzo continually refused to answer any question other than his name.  Finally, Carazzo was jailed for eighteen months for contempt of court.  *Arnold*, 773 F.2d 825–27.

At their trial for obstructing the grand jury's investigation, the government admitted a wire tapped conversation in which Arnold told Grieco of his previous attempt to obstruct justice. In the recording Arnold told Grieco that seven years earlier a former associate, "Pinkie," had asked Arnold for money to pay for an attorney. Arnold attempted to get Pinkie the money but was unsuccessful. Arnold then told Grieco how Pinkie became the government's chief witness against him in a prosecution for falsely identifying the source of his income. *Id.* at 832–33.

On appeal, the Seventh Circuit held the district court did not abuse its discretion by admitting the recorded conversation in which Arnold detailed his prior obstruction attempt. The Seventh Circuit explained, "The point of Arnold's story was that it was necessary to fulfill any promises made to a potential witness to insure that the witness will remain silent if jailed for contempt." *Id.* at 833. Since the promise made to Pinkie was substantially similar to the promises made to Carazzo, the Seventh Circuit held this evidence of prior obstruction was relevant to Arnold's intent to obstruct the grand jury's investigation. *Id.*

In both *Moree* and *Arnold*, the manner of the defendants' prior obstructive conduct was substantially similar to the manner in which they were being charged with obstruction. The same cannot be said in the current case. Assuming, *arguendo*, that Nighbert's comments to Harrison were intended to obstruct justice, this is an entirely different manner of obstruction than Nighbert is alleged to have committed in the current case. Nighbert directly confronted Harrison in a threatening manner whereas the superseding Indictment alleges Nighbert remained in the background while Lawson and Billings attempted to convince Rummage not to cooperate with the investigation. In addition, unlike Rummage, there is no indication that Harrison was a potential government witness or in any way involved with a government investigation.

6

Second, the government's reliance on *Moree* and *Arnold* is misplaced, because a broad interpretation of their holdings does not appear to be warranted.  Since the current case is factually distinguishable from *Moree* and *Arnold*, these cases would only be persuasive if they stood for the broad principle that *any* alleged prior obstructive conduct is relevant to a defendant's intent in an unrelated charge for obstruction.  However, neither case has ever been cited for this broad proposition.  Rather, it appears these holdings are meant to be narrowly interpreted.  Both the *Moree* and *Arnold* courts specifically highlighted the substantial similarities between the alleged prior obstructive conduct and the unrelated charged obstructive conduct.  Thus, *Moree* and *Arnold* should be interpreted narrowly as holding that *substantially similar* alleged prior obstructive conduct is admissible as relevant 404(b) evidence to establish that a defendant intended to obstruct justice in the charged incident.

If the *Moree* and *Arnold* holdings do not apply, then the evidence of the Nighbert-Harrison conversation is likely irrelevant.  Neither Harrison's testimony nor the FBI report detailing the October 2007 incident has a tendency to make it more or less probable that Nighbert was involved in the obstruction conspiracy charged in this case.  Therefore, this evidence is inadmissible pursuant to Rule  402.

Finally, even if the government persuades the Court at the *Enright* Hearing that this evidence is relevant and that the evidence is otherwise admissible pursuant to Rule 404(b), the evidence is inadmissible under Rule 403.  If evidence of the Nighbert-Harrison conversation is admitted, both parties will need to go into substantial detail explaining an event completely unrelated to this case.  In an already complicated and likely multi-week trial, going down this path may only confuse the jury and waste the court's time.

7

In summary, evidence related to the Nighbert-Harrison conversation is not relevant to the current case.  Therefore, the recommendation that this evidence should be admitted pursuant to Rule 404(b) will not be adopted.

### B.    Financial Disclosure Forms

The government also plans to introduce state financial disclosure forms in which Nighbert does not list his 50% ownership interest in Double Buck, LLC.  The government contends this evidence is relevant and establishes Nighbert's intent with regard to the use of the fictitious "Two Bucks, LLC" through which Nighbert allegedly received bribe money from Lawson.  The government alleges in the superseding Indictment that less than a month after stepping down as Transportation Cabinet Secretary, a firm associated with Lawson paid Nighbert $36,000 to purchase an Avalon.  Nighbert had this $36,000 check made payable to Two Bucks, which the government claims is a pseudonym for Double Buck.[1]  Based on his alleged use of Double Buck/Two Bucks to receive bribe money, the government contends Nighbert's failure to disclose his ownership interest in Double Buck is relevant to his intent to use the company as a secret conduit for receiving bribe money from Lawson.

Nighbert argues the failure to disclose his ownership interest in Double Buck was merely an oversight and does not show his intent to use the company to collect bribe money.  Further, Nighbert points out that his ownership interest *was* publicly filed with the Kentucky Secretary of State.

The fact that Nighbert allegedly concealed his ownership interest in a corporation allegedly used to accept the bribe money from Lawson meets the threshold for relevancy. Therefore, the Court

---

[1]    The government claims, "Through counsel, Nighbert has tried to explain that the use of the 'Two Bucks' name was a mistake, that he meant to use 'Double Buck' (Two Bucks does not exist)."  The court has not found in the record where or when defense counsel gave this excuse.

must examine the evidence using the following three-step analysis:

> First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative.

*Bell*, 516 F.3d at 441. Nighbert acknowledges he did not disclose his ownership interest on the financial disclosure forms, and admitting evidence of other acts to establish intent is permitted by Rule 404(b). Therefore, the only analysis necessary is whether admission of this evidence is more prejudicial than probative.

If the evidence is deemed relevant, Nighbert claims it has "relatively minor potential probative value" in light of the fact that his ownership interest in Double Buck was already a matter of public record. Therefore, without explaining how he would be prejudiced by its admission, Nighbert concludes that the evidence's probative value is "clearly outweighed by its prejudicial impact on the Defendant." However, Magistrate Judge Todd found that there is only limited danger of unfair prejudice because "the government must prove that the check made payable to 'Two Bucks,' when it should have been made payable to "Double Buck' was actually a bribe." Thus, he recommended this evidence be admitted under Rule 404(b) with limiting instructions.

Balancing the probative value against the prejudicial effect favors adopting Magistrate Judge Todd's recommendation. If the government can establish Double Buck was used as a receivership for bribe money from Lawson, then Nighbert's alleged attempt to cover up his ownership interest in this company is highly probative of his intent to conceal his acceptance of money from Lawson. No specific prejudice has been identified that would substantially outweigh the probative value of this evidence. Finally, evidence that Nighbert's ownership interest was already a matter of public

9

record could be used to rebut the government's theory that he was deliberately not disclosing his connection with Double Buck.  However, the fact that such evidence exists to rebut the government's argument does not mean that the government's evidence lacks probative value.  Accordingly, the Court will adopt this recommendation.

## III.   CONCLUSION

Accordingly, **IT IS ORDERED** that Nighbert's Motion to Exclude 404(b) Evidence [DE 122] is **GRANTED IN PART** and **DENIED IN PART**.  Nighbert's objections to the Report & Recommendation [DE 401] are **GRANTED IN PART** and **DENIED IN PART**.  The portion of the Magistrate Judge's Report & Recommendation recommending that evidence of the Nighbert-Harrison conversation should be admitted pursuant to Rule 404(b) is **REJECTED**; however, the portion of the Magistrate Judge's Report & Recommendation recommending that the financial disclosure forms can be admitted under 404(b) is **ADOPTED**. Otherwise, the Magistrate Judge's Report & Recommendation [DE 387] is **ADOPTED** and **INCORPORATED** herein by reference.

This 1st day of July, 2009.



**Signed By:**

***Karl S. Forester***  K S F

**United States Senior Judge**

10